**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **WENDY FITZWATER, on behalf of** | ) | |
| **herself and similarly situated employees,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **vs.** | ) | **1:18-cv-00137** |
| | ) | |
| **MIKE COLE SR., et al.** | ) | **FLSA Collective Action** |
| | ) | |
| **Defendants.** | ) | **Jury Demand** |
| | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR EXPEDITED**
**COURT-SUPERVISED NOTICE TO THE PUTATIVE CLASS AND FOR**
**CONDITIONAL CERTIFICATION**

Wendy Fitzwater (hereinafter "Plaintiff" or "Fitzwater") brought this action on behalf of

herself and all other similarly situated employees pursuant to 29 U.S.C. § 216(b) to remedy

violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA" or "Act"). Plaintiff

claims that Defendants systematically violated the minimum wage and overtime pay provisions

of the FLSA, 29 U.S.C. §§ 203(m), 206 and 207 through illegal company-wide policies,

practices and procedures.

Specifically, Plaintiff claims Defendants violate the FLSA by: failing to comply with the

prerequisites to be able to claim a tip credit under the Act; shifting its business expenses to its

employees thereby reducing their wages below the statutory minimum; improperly claiming a tip

credit for non-tip generating work; and, failing to properly pay for all hours worked. These

practices were uniformly applied to all workers for whom Defendants claimed a tip credit.

Therefore, Plaintiff seeks to send notice to the following "Putative Class."

**All current and former employees of Big Mike's Steakhouse for whom Defendants claimed a "tip credit" by paying them a direct hourly wage of less than $7.25 per hour for any work week since September 10, 2015.**

## II.      FACTS

Defendants Mike Cole Sr., Scott Powell, Caine Conway, Casey Taylor, Big Mike's Restaurant LLC, Big Mike's Steakhouse OB, LLC, Big Mike's Restaurant II L.L.C., and Big Mike's Restaurant Andalusia LLC (collectively "Defendants")[1] do business as Big Mike's Steakhouse.  Defendants own and operate a chain of restaurants with common policies, practices and procedures.  The Putative Class members were employed by the Defendants and were subject to the same rules, policies, procedures and practices with respect to the issues raised in the Complaint.

### A.  Alleged FLSA Violations

#### 1.  Tip Credit Violations

Under the FLSA, an employer is permitted to credit wages with tips received up to $5.12 per hour. 29 U.S.C. § 203(m)(1).   In other words, an employer is required to pay a "tipped employee"[2] a "cash wage" of $2.13 an hour and it may credit tips received to make up the rest of the applicable minimum wage, although this credit may not exceed the value of tips actually received. *Id.*

In order to take a tip credit under the FLSA the tipped employee must be informed by the employer of the tip credit law, and the employee must be allowed to retain all tips received by

---

[1] Big Mike's Steakhouse is owned and operated by Cole, Powell, and Conway. Taylor is a registered organizer for Big Mike's Steak House OB, LLC. *See* Dkt. 1 pp. 3-4. Defendants engaged in related activities under common control for common business purpose and therefore were a single "enterprise" for FLSA coverage purposes. See U.S.C. 203(r)(1).

[2] A "tipped employee" is any employee engaged in an occupation in which he or she customarily and regularly receives more than $30 a month in tips.  29 U.S.C. § 203(t).

such employee.[3]  29 U.S.C. § 203(m).  The tip credit shall not apply unless "all tips received by such employee have been retained by the employee." 29 U.S.C. § 203 (m). *See Myers v. Copper Cellar Corp.*, 192 F.3d 546, 549 n.4 (6th Cir. 1999); *Kilgore v. Outback Steakhouse*, 160 F.3d 294. 298 (6th Cir. 1998).

When employers utilize the tip credit their employees are deemed to be earning minimum wage for the purposes of the FLSA. *See* 29 U.S.C. §§ 203(m), (t); 29 C.F.R. § 531.60 ("tips [in excess of the tip credit] are not payments made by the employer to the employee as remuneration for employment within the meaning of the [Fair Labor Standards] Act").  Therefore, Plaintiff as well as all other Putative Class members (employees subject to the tip credit) are deemed to make minimum wage.  *Id.*

Because employees are deemed to make minimum wage, any deductions from the pay of an employee making minimum wage necessarily reduces their compensation to levels below the statutory minimum.  An employer may not require an employee to pay for uniforms or tools of the trade if so doing reduces the employee's pay below the minimum wage. 29 CFR § 531.3(d); *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1236-37 (11th Cir. 2002); *Shultz v. Hinojosa*, 432 F.2d 259, 266 (5th Cir. 1970); *Marshall v. Krystal Co.*, 467 F.Supp. 9, 13 (E.D. Tenn., 1977) ("Krystal was required to pay at all pertinent times the cost of uniforms and of their laundering where such cost reduced its employees' wages below the applicable minimum wage rate."); *Brennan v. De Laney*, 1974 U.S. Dist. LEXIS 11791 (M.D. Tenn.).  Therefore, employers who claim a "tip credit" cannot require or permit an employee to incur expenses for uniforms, uniform cleaning, cash shortages, or tools of the trade. *Id.*  Otherwise, the employee would be

---

[3] Employers may, however, require employees to pool tips among employees who customarily and regularly receive tips.  29 U.S.C. § 203(m).

forced to "kick back" wages or tips to the employer through payroll deductions or de facto deductions. 29 C.F.R. § 531.35.  Such "kicked back" wages or tips are not received "free and clear" and the employee would be receiving less than minimum wage.  *Id.*

   i.      *Failing to Inform Employees of the Tip Credit Provisions*

Defendants failed to notify the employees of the provisions of the FLSA's tip credit as required. *See* 29 U.S.C. § 203(m)(1); (Exhibit 1 Fitzwater Declaration: ¶4; Exhibit 2 Phillips Declaration: ¶4). Therefore, Defendants cannot claim the tip credit. *See* 29 U.S.C. § 203(m).

   ii.     *Defendants Tip Credit Practice*

Defendants did not pay Plaintiff or Putative Class members a direct wage of $7.25 per hour.  (Exhibit 1: ¶¶2-3; Exhibit 2: (¶¶2-3).  Instead, Defendants claimed a tip credit. Defendants issued employee paystubs reflecting an hourly rate of $1.00 or not showing the direct hourly wage paid at all. (Exhibit 1: ¶2; Exhibit 2: ¶2; Exhibit 3: Fitzwater Paystub; Exhibit 4: Phillips Paystub). Plaintiff and opt-in Phillips both submit paystubs showing a $1.00 per hour rate. (Exhibits 3 and 4). Opt-in Phillips' paystubs from Thomasville do not show the number of hours or rate of pay. (Exhibit 2: ¶33; Exhibit 5: Phillips Paystub). Plaintiff has seen paystubs showing a $1.00 per hour rate for Orange Beach employees who were in positions other than servers. (Dkt. 1 ¶ 55). Opt-in Plaintiff saw other employees pay stubs at the Thomasville location that did reflect $1.00 per hour rate. (Exhibit 2: ¶31). Plaintiff has spoken with servers from the Thomasville location, who confirmed they were paid a $1.00 per hour rate. (Dkt. 1 ¶ 44). Because the maximum tip credit available under the FLSA is $5.12 per hour, Defendants have violated the FLSA claiming a tip credit greater than $5.12 per hour.  *See* 29 U.S.C. § 203(m)(1).

   iii.    *Employer Retaining Portion of Tips*

Defendants required Plaintiff and the Putative Class members to purchase and wear uniform shirts and logoed aprons to perform their job. (Exhibit 1: ¶¶5-6; Exhibit 2: ¶¶5-6). Defendants also required them to wear these uniform t-shirts and aprons when they worked. (Exhibit 1: ¶6; Exhibit 2: ¶6). Defendants did not reimburse Plaintiff or Putative Class members for the costs of purchasing the uniform t-shirt or aprons. (Exhibit 1: ¶¶5,8; Exhibit 2: ¶¶5-8). Similarly, Defendants did not reimburse Plaintiff or Putative Class members for the costs associated with maintaining their uniforms in accordance with Defendants' standards for uniforms. (Exhibit 1: ¶¶9-12; Exhibit 2: ¶¶9-12). Defendants also required Plaintiff and the Putative Class members to pay for tools of the trade such pens, pants, and shorts. (Exhibit 1: ¶7; Exhibit 2: ¶7). Defendants automatically deducted a percentage of Plaintiffs' credit card tips.

Plaintiff's and the Putative Class members' credit card tips were retained by the Defendant until the end of the pay period. Defendants withheld a portion of the servers' tips when issuing paychecks purportedly pursuant to a tip out policy. (Exhibit 1: ¶¶14-16; Exhibit 2: ¶¶14-16). However, Defendants withheld a percentage of Plaintiff's, and similarly situated employees working as servers credit card tips to purportedly pay the bartender and the bartender. Defendants withheld a portion of the tips for the bartender even when the bartender was a manager. (Exhibit 1: ¶¶14-16; Dkt. 1 ¶41). Defendants also withheld a portion to pay the bussers, even when no bussers were working. (Exhibit 1: ¶15; Dkt. 1 ¶41).

Accordingly, the costs of the uniforms, uniform maintenance and tools of the trade, and wages of other employees were paid by Plaintiff and the Putative Class from their tips.  This violates the Act's prohibition against employers deducting from an employee's wages if the deduction reduces the wages below the statutory minimum.  *See* 29 C.F.R. §§ 531.3(d), 531.32(c), 531.35. Specifically, an employer may not make deductions that reduce the earnings

below the minimum wage, for the following: (1) uniforms; 29 CFR § 531.3(d) (cost of uniforms will not be included in computing wages); (2) uniform cleaning or maintenance; 29 CFR § 531.3(d) (cost of uniform cleaning will not be included in computing wages); and, (3) tools of the trade; 29 CFR § 531.3(d) (tools of the trade will not be included in computing wages). Employers who claim a tip credit cannot require or permit an employee to incur expenses for uniforms, uniform cleaning, or tools of the trade. *Id.* Otherwise, the employee would be forced to "kick back" wages or tips to the employer through payroll deductions or de facto deductions. 29 C.F.R. § 531.35. Such "kicked back" wages or tips are not received "free and clear." Therefore, the employee would be receiving less than minimum wage. *Id.*

Notably, the prohibition on taking credits or deductions from the minimum wage for work-related expenses applies whether the expenses are deducted from wages or are shifted onto the employee to bear in the first instance. "[T]here is no legal difference between deducting a cost directly from the worker's wages and shifting a cost, which they could not deduct, for the employee to bear. An employer may not deduct from employee wages the cost of facilities which primarily benefit the employer if such deductions drive wages below the minimum wage." *Arriaga v. Florida Pacific Farms, L.L.C.*, 305 F.3d 1228, 1236 (11th Cir. 2002). *See also, Marshall v. Root's Restaurant, Inc.,* 667 F.2d 559, 560 (6th Cir. 1982); *Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 511 (S.D.N.Y. 2010); *Cuzco v. Orion Builders, Inc.,* 262 F.R.D. 325, 332 (S.D.N.Y. 2009); *Yu G. Ke v. Saigon Grill, Inc.,* 595 F. Supp. 2d 240, 257 (S.D.N.Y. 2008); 29 C.F.R. § 531.35.[4] Requiring Plaintiff and similarly situated to tip out managers or for phantom tipped employees violates 29 U.S.C. §203(m) requirement that all tips be retained by the employee.

---

[4] 29 CFR § 531.35 states: Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the

As such, Defendants failed to meet the requirement in Section 203(m) that "all tips received by such [tip credit] employee[s] have been retained by the employee[s]"[5] and Defendants cannot claim the tip credit.

### iv.      Violations of the 20% Rule

Plaintiff and the Putative Class members performed non-tip generating work before their first customer and after their last customer in excess of 20% of their worktime. The activities were more like food prep performed by a kitchen worker, cleaning work performed by a janitor or dishwasher, and stocking like a stockperson, and washing of clothing like a laundry attendant. Plaintiff and Putative Class members were required to arrive before the shift and perform various duties that included food preparation such as preparing the house made dressings, preparing the bread, cutting lemons, and other duties. (Exhibit 1: ¶¶17-22; Exhibit 2: ¶¶17-22). Plaintiff and Putative Class members were required to perform janitorial and stock person type work before they started serving their first customer and after they finished serving their last customer, including sweeping, mopping, stocking the freezer, and other duties. (Exhibit 1: ¶¶23-27; Exhibit 2: ¶¶23-26). Plaintiff spent between thirty minutes to two hours performing non-serving duties after serving her last customer. (Dkt. 24-1 Plaintiff's Response to Court Issued Interrogatory No. 4). Named Plaintiff and opt-in Phillips heard other employees complain about the amount of non-server work they were required to perform before and after they were serving customers.

---

employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.

[5] Even if these amounts were paid from other than tips, it would amount to a reduction of the wages paid below the minimum and the tip credit requirements would not be met.

(Exhibit 1: ¶¶28; Exhibit 2: ¶¶28).  The time spent doing non-tip generating work routinely exceeded 20% of the work hours.

According to the Department of Labor's handbook, "where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties." *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 878 (8th Cir. 2011). (internal quotes omitted). The Eighth Circuit has upheld the handbook elaboration as a "reasonable interpretation of the regulation." *Id.* at 880. Multiple district courts within the Eleventh Circuit agree. *Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360, 1367 (S.D. Fla. 2009); *Crate v. Q's Restaurant Group LLC*, 2014 U.S. Dist. LEXIS 61360, 2014 WL 10556347 at *3 (M.D. Fla. 2014); *Holder v. MJDE Venture*, LLC, 2009 U.S. Dist. LEXIS 111353, 2009 WL 4641757 at *3 (N.D. Ga. 2009); *See Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, *reh. Denied reh., en bac, denied*, 2011 U.S. App. LEXIS 26371 (8th Cir. July 6, 2011), *cert denied*, 132 S. Ct. 1094, 181 L. Ed. 29 977 (2012) (holding that the DOL Wage and Hour Division handbook §30d00(e) reasonably interprets 29 C.F.R. § 531.56(e) regarding employees subject to the FLSA tip credit who some time perform nontipped work and applying the 20% maximum limitation on non-tip generating work for servers paid using the tip credit); *see also Thomas v. Bayou Fox, Inc.*, 2017 U.S. Dist. LEXIS 82769, at *10 (M.D. Ala. May 31, 2017) (holding that plaintiffs' claim was sufficient to survive defendants' motion to dismiss in light of the DOL's 20% rule.).

Plaintiffs have provided evidence in this case that non-tip-producing activity exceeds the 20% threshold "in hours worked before the restaurant opened – time that could not generate tips because there were no customers to provide them." *See White v. NIF Corp.*, 2017 U.S. Dist.

LEXIS 6703, at *15 (S.D. of Alabama); see also *Crate v. Q's Rest. Grp. LLC*, No. 8:13-cv-2549-T-24 EAJ, 2014 U.S. Dist. LEXIS 61360 (M.D. Fla. May 2, 2014) (Stating that "to the extent that there are discrete time periods — such as before the restaurant opens to customers, after the restaurant is closed to customers, or between the lunch and dinner shifts — during which the Plaintiffs can show that they were engaged in related, non-tipped activities, such could be used as evidence to support their claim that they spent more than 20% of their shifts doing related, non-tipped work for which Defendant is not entitled to the tip credit.").  Moreover, the non-tip-producing duties being performed are regular, discrete, substantial, and not intertwined with customer-service time.

### 2.    *Unrecorded and Uncompensated Work Hours*

Defendants failed to record all hours worked by Plaintiff and Putative Class members. (Exhibit 1: ¶¶11-12; Exhibit 2: ¶¶11-12). Opt-in Plaintiff Phillips remembers going to clock out and finding that management had already clocked her out. (Exhibit 2: ¶32). For example, Plaintiff and Putative Class members were required to launder their uniform shirts, aprons, and other parts of their uniforms. (Exhibit 1: ¶¶9-12; Exhibit 2: ¶¶9-12). Defendants did not compensate Plaintiffs for this off-the-clock work. Defendants failed to record or pay for time spent weekly by Plaintiff and Opt-in Plaintiff for the time spent or costs related to maintaining the uniform t-shirts or aprons. *Id*. Plaintiff and Putative Class members were required to launder their uniform shirts, aprons, and other parts of their uniforms. (Exhibit 1: ¶¶9-12; Exhibit 2: ¶¶9-12). Defendants did not provide Plaintiff with paystubs indicating the hours they were recording and the rate they were paying. (Exhibit 2¶33: *See examples* Exhibits 3 and 5). Defendants failure to provide paystubs reflecting the hours worked and the rate paid was designed to obfuscate the

fact not all time was compensated. Plaintiff and opt-in Plaintiff believe that they and similarly situated servers were not paid for all their work time.

## III.    NOTICE STANDARD AND ARGUMENT

### A.  The Fair Labor Standards Act Remedial and Humanitarian Purpose Grants Right to Seek Collective Action

The FLSA was enacted in 1938 for "the prime purpose of . . . aid[ing] the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 698, 707 n.18, 65 S. Ct. 895, 898, 902 n.18, 89 L. Ed. 1296 (1945). Congress enacted the FLSA in recognition of the fact that, "due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce." *Id.* at 706-07, 65 S. Ct. at 902. "To accomplish this purpose standards of minimum wages and maximum hours were provided," and the policy considerations underlying those standards forbid waiver of those basic standards. *Id.* at 707, 65 S. Ct. at 902.

Consistent with policy goals that led the Congress to enact the FLSA, the courts have long held the FLSA is "remedial and humanitarian in purpose," and "must not be interpreted or applied in a narrow, grudging manner." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597, 64 S. Ct. 698, 88 L. Ed. 949 (1944).

In 29 U.S.C. §216(b) Congress explicitly provides:

An action . . . **may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.** No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

(Emphasis Added). The FLSA mandates that putative class members "opt-in" as a prerequisite to obtaining relief under any pending suit. *See, e.g., Garner v. G.D. Searle Phar. & Co*., 802 F. Supp. 418, 421 (M.D. Ala. 1991) ("Under § 216(b) . . . a person is not considered a member of the 'collective action' and will not be bound by or benefit from the court's judgment unless the person has filed a written consent with the court and thereby affirmatively 'opted in' to the suit.").   Therefore, timely notice is necessary to preserve the claims of potential plaintiffs whose statutes of limitation continue to run until their written consent is filed with the court. *Petty v. Russell Cellular, Inc*., No. 2:13-cv-1110, 2014 U.S. Dist. LEXIS 42185, at *15 (S.D. Ohio Mar. 28, 2014); citing *Wolfram v. PHH Corp*., No. 1:12-cv-599, 2012 U.S. Dist. LEXIS 181073, 2012 WL 6676778 at *3 (S.D. Ohio Dec. 21, 2012).

**B.  The Court Should Facilitate Timely Notice**

The Supreme Court has held that trial courts have the authority to implement the collective suit provision of section 216(b) by "facilitating notice to potential plaintiffs." *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Belcher v. Shoney's Inc*., 927 F. Supp. 249, 251 (M.D. Tenn. 1996); *Pritchard v. Dent Wizard Int'l Corp*., 210 F.R.D. 591, 594 (S.D. Ohio 2002).  Furthermore, it is appropriate for trial courts to order the defendants to produce to plaintiff the names and addresses of putative class members.  *Hoffman-LaRoche*, 493 U.S. at 170 (affirming the district court's decision to permit discovery of putative class members for notice purposes without exploring alternative basis for the discovery); *see also, Schwed v. General Electric Co*., 159 F.R.D. 373, 375 (N.D.N.Y. 1995) (acknowledging that in addition to facilitating notice the trial court can order discovery of the names and addresses of potential class members).

Facilitating notice serves numerous important goals such as avoiding a multiplicity of duplicative suits and setting deadlines to expedite disposition of the action. *Hoffman-LaRoche*, 493 U.S. at 172; *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 333, 336 (2nd Cir. 1978); *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998); *Belcher*, 927 F. Supp. at 251. As the Supreme Court has explained:

> A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [illegal] activity.
>
> These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate . . . It follows, that once an [FLSA] action is filed the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way.

*Hoffman-LaRoche*, at 170-71. In sum, notice fulfills the broad remedial purposes of the FLSA. *Id.* at 172.

### C. The Two-Step *Hipp* Standard for Notice Is Lenient and Typically Results in Conditional Certification

It is appropriate for courts to exercise their discretion to order notice where plaintiffs establish that they are similarly situated to the putative class.[6] 29 U.S.C. § 216(b); *Hoffman-LaRoche*, 493 U.S. at 169. Accordingly, courts have adopted a two-step approach with regard to the similarly situated inquiry. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F .3d 1208, 1219 (11th Cir. 2001) (stating that the two-tiered approach "appears to be an effective tool for district courts to adopt in future cases"); *Morgan et al. v. Family Dollar Stores, Inc.*, 2008 WL 5220263 *18 (11th Cir. 2008).

---

[6] "Similarly situated" has been defined as similarity in job duties and/or pay provisions. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996).

Under the *Hipp* two-tiered approach, the court makes an initial determination as to whether plaintiffs meet their burden, based solely upon the pleadings and any affidavits, of showing that notice of the action should be given to potential class members. *Id*. at 1218. Plaintiffs meet their burden, which is not heavy, by making allegations of class wide liability, that is, detailed allegations supported by affidavits that which successfully engage defendant's affidavits to the contrary. *Hipp* at 1219; *Sperling v. Hoffman-LaRoche*, 118 F.R.D. 406, 407 (D.N.J. 1988). "In *Anderson v. Cagle's, Inc.*, 488 F.3d 945 (11th Cir. 2007), the Eleventh Circuit explained that "[b]ecause the court has minimal evidence, this determination is made using *a fairly lenient standard, and typically results in conditional certification of a representative class*," such that "putative class members are given notice and the opportunity to opt-in" and the action proceeds as a representative action in discovery. (Emphasis added.) *Longcrier v. HL-A Co., Inc*., 595 F. Supp. 2d 1218, 1233 (S.D. Ala. 2008); citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001) (citations omitted); *see also Grayson v. K Mart Corp*., 79 F.3d 1086, 1089 (11th Cir. 1996) (plaintiffs' burden at the initial stage "is not heavy"); *Kerce v. W. Telemarketing Corp*., 575 F. Supp. 2d 1354. 1358 (S.D. Ga. 2008) ("Typically, courts presented with motions to conditionally certify a class under § 216(b) grant those motions and allow the case to proceed to discovery."). Granting conditional certification is very much the norm, and denying it is very much the exception. *Williams v. Omainsky*, No. 15-0123-WS-N, 2016 U.S. Dist. LEXIS 7419, at *14 (S.D. Ala. Jan. 21, 2016). The Eleventh Circuit characterizes the legal standard for determining similarity at the conditional-certification stage as being "not particularly stringent, ... fairly lenient, ... flexible, ... not heavy, ... and less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)."*Morgan v. Family Dollar Stores*, 551 F.3d 1233,1261 (11th Cir. 2008).

Accordingly, notification is appropriate at the notice stage regardless of whether subsequent discovery may prove that the original plaintiffs and opt-in plaintiffs are not similarly situated. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th Cir. 2006); *Wilks v. The Pep Boys*, 2006 U.S. Dist. LEXIS 69537 *8-9 (M.D. Tenn., September 26, 2006). In this situation, the court may simply decertify the class. *Yates v. Wal-Mart Stores, Inc.*, 58 F. Supp. 2d 1217, 1219 (D. Colo. 1999).

In sum, court-authorized notice is appropriate where plaintiffs have made a preliminary "modest factual showing" that they are "similarly situated" to the employees to whom they seek to have notice sent. *See Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991); *Comer*, 454 F.3d at 546-47. Plaintiff has met this burden through the allegations in her complaint and the declarations and evidence submitted in support of this motion.

### D.    Employer Bears Burden of Proving Compliance

The employer bears the burden of proving that they are entitled to take tip credits. *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979); *Chisholm v. Gravitas Rest. Ltd.,* Civil Action No. H-07-475, 2008 U.S. Dist. LEXIS 28254, 2008 WL 838760, at *3 (S.D. Tex. March 25, 2008); *Bernal v. Vankar Enterprises, In*c., 579 F. Supp. 2d 804, 808 (W.D. Tex. 2008); *Pedigo v. Austin Rumba, Inc*., 722 F. Supp. 2d 714, 722-23 (W.D. Tex. 2010); see also DOL Field Operations Handbook § 30d00b ("Section 3(m) of FLSA makes clear the intent of Congress to place on the employer the burden of proving the amount of tips received by 'tipped employees,' and the amount of tip credit, if any, which the employer may claim.").

Similarly, as this Court has noted the law places the burden of proving that its employees fall within the exemption. *Cartwright v. M2R, Inc.*, No. 5:14-cv-02213-SGC, 2016 U.S. Dist. LEXIS 74386, at *3 (N.D. Ala. June 8, 2016); *citing Herman v. Cont'l Grain Co.*, 80 F. Supp. 2d

1290, 1297 (M.D. Ala. 2000). Consequently, the employer bears the burden of showing that he is

entitled to the wage credits available under section 203(m). *Bueno v. Mattner*, 633 F. Supp. 1446,

1453 (W.D. Mich. 1986) (citing *Donovan v. New Floridian Hotel, Inc.,* 676 F.2d 468, 474 (11th

Cir. 1982)); cf. *Herman v. Collis Foods, Inc.*, 176 F.3d 912, 920 (6th Cir. 1999) ("Although

employers are not required to account for each and every food item offered to or accepted by their

employees, the burden of proving that a deduction from wages represents the reasonable cost of

the meals furnished is on the employer."); *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 549 n.4

(6th Cir. 1999)("Because Congress designed the FLSA to remedy disparities in bargaining power

favorable to employers, the courts narrowly construe the provisions of that statutory scheme,

including its exemptions, in the employee's favor. Accordingly, an employer who invokes a

statutory exemption from minimum wage liability bears the burden of proving its qualification for

that exemption.").

### E.  Plaintiff Has Satisfied Her Lenient Burden and Notice Should Issue

As set forth above, Defendants must meet three prerequisites to claim the tip credit: (1)

Defendants must notify employees of the tip credit provisions contained in the FLSA; (2)

Defendants must pay a cash wage of at least $2.13 per hour; and (3) The employees must be

permitted to retain all of their tips.   Defendants have failed to meet any of these pre-requisites.

Plaintiff's and opt-in plaintiff's paystubs demonstrate how the Defendants paid her a cash

wage of only $1 per hour – less than the federally mandated $7.25 per hour and also less than the

minimum cash wage of $2.13 per hour under the tip credit provisions of Section 203(m). (Exhibit

3; Exhibit 4). This violates the Act's statutory requirements for minimum wage, overtime, and tip

credit. *See* 29 U.S.C. §§ 206,207, and 203(m).

Although this evidence alone is sufficient to justify notice to the Putative Class issue notice, Plaintiff has also presented evidence that Defendants failed to notify workers of the FLSA's tip credit provisions and that the Defendants did not allow workers to retain all of their tips by, among other things, shifting their business expenses to the Putative Class members.

Plaintiff also presented evidence that more than 20% of the time she, and Putative Class members, spent at work were on non-tip generating duties such that Defendants could not claim a tip credit for that time.

Finally, Plaintiff also demonstrate that Defendants required, suffered or permitted off the clock work by her and the Putative Class. Defendants' failure to pay employees for work performed "off-the-clock" denies hourly employees of minimum wages and overtime work performed and is unquestionably an illegal employment practice under the FLSA. *See* 29 U.S.C. §§ 206, 207; 29 C.F.R. § 785.11; *Burry v. National Trailer Convoy, Inc.*, 338 F.2d 422 (6th Cir. 1964); *Clark v. Dollar Gen. Corp.*, 2001 U.S. Dist. LEXIS 25976 (M.D. Tenn., May 24, 2001); *Belcher*, 927 F. Supp. 249.

Plaintiff has presented sufficient evidence to show that she, and those she seeks to represent, were victims of common unlawful and centralized practices which violated the minimum wage, overtime and tip credit provisions of the FLSA. The evidence submitted is enough to meet the lenient burden for notice to issue. In *Grayson v. K. Mart Corp.*, the Eleventh Circuit specifically stated that the requirement for a collective action is one of similarity-not-sameness and is "less stringent" than for joinder of parties under Rule 20 or certification of a class action under Rule 23. 79 F. 3d 1086, 1096 (11th Cir. 1996); *Sullivan v. PJ United, Inc.*, No. 7:13-cv-01275-LSC, 2017 U.S. Dist. LEXIS 40133, at *9 (N.D. Ala. Mar. 13, 2017) (This Court in granting certification of plaintiffs' motion to proceed as conditionally certified collective action this Court

16

determined the plaintiffs had demonstrated a reasonable basis for the class of wide discrimination by making detailed allegations by supported affidavits).

## IV.    Plaintiff's Proposed Process and Notice Should Be Approved

Plaintiff requests a notice period of ninety (90) days, which will give Putative Class members time to opt-in without an undue delay in the proceedings.  Plaintiffs request the Court permit notice of the collective action be issued: (1) U.S. Mail; (2) electronic mail; (3) website posting; and, (4) posting in the restaurants.

### A. Notice Via U.S. Mail and E-mail

Sending notice by U.S. Mail is well-established in the Alabama district courts.  In today's electronic age, reliance on U.S. Mail alone will most likely not provide all Putative Class members notice of this lawsuit.  Indeed, studies indicate that "75% of all direct mail ends up in the trash unopened." (Exhibit 6: SYMPOSIUM: CLASS ACTIONS IN THE GULF SOUTH AND BEYOND: Hurricanes, Mobility, and Due Process: The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina, 80 Tul. L. Rev. 1771, 1794 (2006)). Further, based on experience of counsel, it is likely that between 20 percent and 30 percent of the Putative Class members' physical addresses will be outdated.

Permitting Plaintiffs to send notice by mail, email, and posting online from the outset ensures the best possibly notice to the Putative Class without unnecessary costs or delays caused by later motion practice seeking to supplement a U.S. Mail only notice.  Numerous district courts require employers to produce potential class members' e-mail addresses to facilitate the issuance of notice in an FLSA collective action. *Randle v. Allconnect, Inc.*, No. 1:14-cv-245-WSD, 2014 U.S. Dist. LEXIS 62271, at *11 (N.D. Ga. May 6, 2014)(The district court ordered Defendant to provide class members' email addresses).  In *Williams v. Omainsky*, No. 15-0123-WS-N, 2016

U.S. Dist. LEXIS 7419, at *39 (S.D. Ala. Jan. 21, 2016) this Court recognized that courts routinely order employers to provide contact information for potential plaintiffs, and authorized transmission of the notice using U.S. Mail, telephone, and e-mail.

The court in *Alequin v. Darden Rests., Inc.*, No. 12-61742-CIV, 2013 U.S. Dist. LEXIS 108341, 2013 WL 3945919, at *2 (S.D. Fla. July 31, 2013) agreed that courts in this Circuit commonly approve e-mail notice to potential opt-in class members in FLSA cases and found e-mail to be an efficient and nonintrusive method of communication. *Id.*; *see also Cooper v. E. Coast Assemblers, Inc.*, 2013 U.S. Dist. LEXIS 10435, 2013 WL 308880, at *4 (S.D. Fla. Jan. 25, 2013); *Stuven v. Texas de Brazil (Tampa) Corp.*, 20 Wage & Hour Cas. 2d (BNA) 1110, [WL] at *6 (M.D. Fla. 2013) (declining to impose a presumption that regular mail is the preferred method of notice, and finding that email is not too intrusive); *Pittman v. Comfort Sys. USA (Se.), Inc.*, 2013 U.S. Dist. LEXIS 19434, 2013 WL 525006, at *2 (M.D. Fla. Feb. 13, 2013) ("conclud[ing] that communication through email, in addition to regular mail, is fair and proper notice"); *see also Ritz v. Mike Rory Corp.*, 12 CV 367(JBW)(RML), 2013 U.S. Dist. LEXIS 61634, 2013 WL 1799974, at *5 (E.D.N.Y. Apr. 30, 2013) (permitting notification by email); *Rehberg v. Flowers Foods, Inc.*, No. 3:12cv596, 2013 U.S. Dist. LEXIS 40337, 2013 1190290, at *3 (W.D.N.C. Mar. 22, 2013) (same); *Jones v. JGC Dallas LLC*, Civil Action No. 3:11-CV-2743-O, 2012 U.S. Dist. LEXIS 185042, 2012 WL 6928101, at *5 n.9 (N.D. Tex. Nov. 29, 2012) (collecting cases approving email notice in FLSA cases).

Accordingly, granting e-mail notice is in line with the current nationwide trend in ensuring effective notice in FLSA collective actions. *Conklin v. 1-800 Flowers.com, Inc.*, No. 2:16-CV-675, 2017 U.S. Dist. LEXIS 126733, at *17 (S.D. Ohio Aug. 10, 2017); *Smith v. Generations Healthcare Servs. LLC, No.* 2:16-CV-807, 2017 U.S. Dist. LEXIS 106583, at *18 (S.D. Ohio July

18

11, 2017); *citing Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-cv-253, 2015 U.S. Dist. LEXIS 23630, at *5 (S.D. Ohio Feb. 26, 2015); *See, e.g., Kutzback v. LMS Intellibound, LLC*, No. 2:13-cv-2767, 2015 U.S. Dist. LEXIS 37946, 2015 WL 1393414, at *6 (W.D. Tenn. Mar. 25, 2015); *Petty v. Russell Cellular, Inc.*, No. 2:13-cv-1110, 2014 U.S. Dist. LEXIS 42185, 2014 WL 1308692, at *6 (S.D. Ohio Mar. 28, 2014); *Jones v. JGC Dallas LLC*, No. 3:11-cv-2743-O, 2012 U.S. Dist. LEXIS 185042, 2012 WL 6928101, at *5 (N.D. Tex. Nov. 29, 2012), adopted by 2013 U.S. Dist. LEXIS 8865, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013); *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1128-29 (N.D. Cal. 2009); *Beltran v. Interexchange, Inc.*, Civil Action No. 14-cv-03074-CMA-CBS, 2017 U.S. Dist. LEXIS 205079, at *18-19 (D. Colo. June 9, 2017); *Mark v. Gawker Media LLC,* No. 13-CV-4347 AJN, 2014 U.S. Dist. LEXIS 155424, 2014 WL 5557489, at *5 (S.D.N.Y Nov. 3, 2014); *Woods v. Vector Marketing Corp.*, 14-V-0264-EMC, 2015 U.S. Dist. LEXIS 32370, 2015 WL 1198593, at *6-7 (N.D. Cal. Mar. 16, 2015).

### B.  Defendants Should Quickly Produce Putative Class Member Information

Plaintiffs requests the Court order Defendants to provide putative class members information: (1) name, (2) last known mailing address; (3) phone number(s); (4) e-mail address(es); (5) date of birth; (6) last four digits of social security number; (7) locations worked; (8) dates of employment; and, (9) positions held.

Defendants likely possess this information for putative class members, as this information is collected and maintained by most employers.  Putative Class members' last known phone numbers, date of birth, last four digits of their social security numbers can be used to assist counsel

to locate Putative Class members whose U.S. Mail notice is returned to sender.  Without these data points, it can be more difficult to locate current addresses for the class members.[7]

Dates of birth and social security numbers are requested solely for the limited purpose of locating current mailing and email address for notices who are returned as undeliverable. *In re Wells Fargo Wage & Hour Employment Practices Litig.* (No. III), H-11-2266, 2013 WL 2180014 (S.D. Tex. May 17, 2013) (the court allowed the use of social security numbers for the limited purpose of locating the current addresses of these potential plaintiffs whose notice forms are returned as undeliverable by other means,); *Clincy v. Galardi S. Enterprises, Inc.*, 1:09-CV-2082-RWS, 2010 WL 3119690 (N.D. Ga. Aug. 9, 2010) (the court determined that Plaintiffs should receive the social security number and date of birth of all entertainers that worked during the statutory period); *see also Reece v. United Home Care of N. Atlanta, Inc.*, 2013 U.S. Dist. LEXIS 31995, 17-18 (N.D. Ga. Mar. 7, 2013) (court required defendants to provide the last four digits of social security numbers for all putative class members).

Courts routinely require disclosure of the information in this motion without showing of hardship. In *Smitherman v. Iguana Grill, Inc.*, No. 7:14-cv-01781-JHE, 2015 U.S. Dist. LEXIS 87807, at *7 (N.D. Ala. June 12, 2015) the court ordered Defendant to produce a list in a computer-readable data file containing the name(s), job title(s), dates of employment, last known mailing and email addresses, telephone numbers, and the last four digits of social security numbers for all current and former employees to facilitate notice of the FLSA collective to putative class members. *See also Sealy v. Keiser Sch., Inc*, 2011 U.S. Dist. LEXIS 152369, 14, 2011 WL 7641238 (S.D. Fla. Nov. 8, 2011) (the court required the employer to provide the plaintiff a list including the full

---

[7] For example, there may be individuals with common or similar names, or there may be a data entry error in the database that may return a false positive and additional information may confirm their identity of class members.

name, dates of employment, last known address, telephone number, and email address of each class member within ten days); *Alexander v. Cydcor, Inc.*, 2012 U.S. Dist. LEXIS 187258, 24 (N.D. Ga. Apr. 5, 2012) (court ordered the employer to produce the full names, last known addresses, last known telephone number(s), and personal email addresses of putative class members).

Producing this type of information from the outset encourages timely notice and increases judicial efficiency. Delaying the production of this information will result in a delay in notice, an increase in search costs, diminished judicial efficiency, and increased attorney fees and costs.

## IV.    Conclusion

For the reasons set forth herein, the Court should enter an order:

(1) conditionally certifying this case as a collective action;

(2) appointing Plaintiff's counsel as class counsel;

(3) requiring Defendants to produce to Plaintiff's counsel within ten (10) days of granting this motion a list of all Putative Class members who worked for any Defendant since September 10, 2015 through the present – such list to be in an Excel file including a row for each individual and a separate column for each of the following fields: last name, first name, and middle name; location(s) worked; current or last known home address (with a separate column for street address, city, state and zip code); all known e-mail address(es); all known telephone number(s); date of birth; last four digits of Social Security Number; dates of employment; and, positions held;

(4) approving the form of notice attached as Exhibit 7;

(5) authorizing Plaintiff and her counsel to disseminate the approved notice via U.S. Mail and electronic mail;

(6) authorizing Plaintiff's counsel to post the notice on website(s);

(7) establishing an opt-in deadline for Putative Class members that is 90 days from the date of the original notice mailing; and,

(8) ordering that Putative Class members whose consent form is postmarked or received by Plaintiff's counsel on or before the opt-in deadline shall be consider their opt-in date;

DATED: <u>September 11, 2018</u>

Respectfully submitted,

<u>/s/ Daniel E. Arciniegas</u>
Daniel E. Arciniegas
Arciniegas Law, PLLC
daniel@attorneydaniel.com
501 Union Street
Nashville, TN 37219
Attorney for Plaintiff

<u>*/s/Charles P. Yezbak, III*</u>
Charles P. Yezbak, III
Yezbak Law Offices PLLC
2002 Richard Jones Road, Suite B-200
Nashville, TN 37215
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2018, a true and correct copy of the above and foregoing document, *Plaintiffs' Memorandum in Support of Motion for Expedited Notice to Prospective Class Members* has been properly served via the Court's ECF system, which sent electronic notice to the following counsel of record:


H. William Wasden
bwasden@burr.com
Emily C. Killion
ekillion@burr.com
BURR & FORMAN LLP
Post Office Box 2287
Mobile, Alabama 36652
Telephone: (251)-3344-5151
Facsimile: (251)344-9696

*/s/ Daniel E. Arciniegas*
Daniel E. Arciniegas
Arciniegas Law, PLLC
daniel@attorneydaniel.com
501 Union Street
Nashville, TN 37219
Attorney for Plaintiff

*/s/Charles P. Yezbak, III*
Charles P. Yezbak, III
Yezbak Law Offices PLLC
2002 Richard Jones Road, Suite B-200
Nashville, TN 37215
Attorney for Plaintiff