IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WENDY FITZWATER ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 18-00137-N |
| ) | |
| MIKE COLE, SR, et al., ) | |
|     Defendants. ) | |

## ORDER APPROVING SETTLEMENT OF FLSA CLAIMS

In this conditionally certified collective action alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"), the parties have filed a joint motion for court approval of their proposed settlement of the FLSA claims of the named Plaintiff, Wendy Fitzwater, and the 6 opt-in Plaintiffs: Carlissa Phillips, Jeanie Odom, Lisa Smith, Cynthia Woodard, Veronica McLaughlin, and Alexandria Glass (collectively, "the Plaintiffs"). (Doc. 94).[1] A telephonic hearing was held with counsel for the parties on October 4, 2019, to discuss some concerns the undersigned had with aspects of the proposed settlement, and the Plaintiffs have filed a supplemental brief (Doc. 98) addressing those concerns. The Plaintiffs have also since filed a supplemental motion for approval of the settlement agreement, which also requests modification of a deadline in the stipulated judgment (Doc. 99).

---

[1] Subject matter jurisdiction over this action exists by virtue of both federal question jurisdiction under 28 U.S.C. § 1331, and the FLSA's independent statutory grant of jurisdiction, 29 U.S.C. § 216(b). With the consent of the parties, the Court has referred this action to the undersigned Magistrate Judge to conduct all proceedings in this action, to order entry of final judgment, and to conduct all post-judgment proceedings, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 39, 42).

> In *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350 (11th Cir. 1982), [the Eleventh Circuit Court of Appeals] held that "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees." 679 F.2d at 1352. The first is under the supervision of the Secretary of Labor. *Id.* at 1353; 29 U.S.C. § 216(c). The second, which is "[t]he only other route for compromise of FLSA claims[,] is provided in the context of suits brought directly by employees against their employer ... to recover back wages for FLSA violations." *Lynn's Food,* 679 F.2d at 1353. In those lawsuits, the parties may "present to the district court a proposed settlement" and "the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

*Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir. 2013).[2]  Thus, it is the Court's duty to determine whether the parties' proposed settlement "is a fair and reasonable res[o]lution of a bona fide dispute over FLSA provisions."  *Lynn's Food*, 679 F.2d at 1355.  Upon consideration of the allegations in the complaint (Doc. 1), the representations in the parties' joint motion (Docs. 94, 95), the statements of counsel at the October 4th hearing, and the Plaintiffs' supplemental briefs (Docs. 98, 99), the undersigned finds that the proposed settlement satisfies this standard for all of the Plaintiffs.

The undersigned convened the October 4th hearing to discuss whether there was a *bona fide* dispute over FLSA provisions with regard to 5 of the 6 opt-in Plaintiffs: Odom, Smith, Woodard, McLaughlin, and Glass (collectively, "the DOL Settlement Plaintiffs").  (*See* Doc. 96).

As noted previously:

---

[2] "[T]he rule of *Lynn's Food* applies to settlements between former employees and employers."  *Nall*, 723 F.3d at 1307.

> [I]n April 2018, after Fitzwater filed this action on March 21, 2018, but before the Defendants were served with the complaint in late May and early June, *compare* (Doc. 1) *with* (Docs. 6 – 12, 15), the Wage and Hour Division of the U.S. Department of Labor ("DOL") initiated an audit of the Defendants' payroll practices.  (*See* Doc. 35 at 3).  The DOL issued its determinations to the Defendants on August 22, 2018, "including a settlement demand requiring payment of back wages and other elements of compensation, including properly calculated overtime and other elements of compensation, to all current and former employees, with the sole exception of Plaintiff Fitzwater. The Agency's determination and settlement demand included loss of Defendants' 'tip credit' due to a tip pooling arrangement that was deemed not compliant with the FSLA."  (*Id.*).  The DOL did not assess liquidated damages after determining no willful conduct on the part of the Defendants. (*Id.* at 4).   Fitzwater was excluded from the DOL's payment compensation roster due to the DOL's policy of not representing employees who are represented by counsel and have claims pending in court.  (*Id.*).   The roster did include former employee Carlissa Phillips (*id.*), to date the only opt-in plaintiff (*see* Doc. 33).

(Doc. 53 at 3 – 4).   As confirmed by the parties at the hearing, the DOL Settlement Plaintiffs have all accepted their settlement checks from the above-mentioned DOL investigation.

It is well settled that, "[i]f an employee accepts the payment of back wages supervised by the DOL, the employee waives the right to bring suit for unpaid wages and liquidated damages."  *Niland v. Delta Recycling Corp.*, 377 F.3d 1244, 1247 (11th Cir. 2004) (per curiam) (citing 29 U.S.C. § 216(c) ("The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section [206 or 207 of this title], and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have

under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages.")). "For there to be a valid waiver section 216(c) simply requires (a) that the employee agree to accept the payment which the Secretary determines to be due and (b) that there be 'payment in full.' " *Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537, 539 (5th Cir. 1977).³ DOL regulations also appear to require that payment under a DOL-supervised settlement be accompanied by a form explaining such waiver. *See Niland*, 377 F.3d at 1248.

The Plaintiffs assert that the "Court does not need to assess whether the settlement is fair to the employer or to the DOL process[,]" only whether it is fair to the Plaintiffs. (Doc. 98 at 5). However, as the Plaintiffs' themselves note, the reason for subjecting FLSA settlements to procedural safeguards is that allowing FLSA rights to be abridged or waived by private agreement "would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Lynn's Food*, 679 F.2d at 1352 (quotation omitted). Routinely allowing FLSA plaintiffs who have previously accepted DOL-supervised settlements to disregard them by later instituting or joining district court FLSA actions, in hopes of achieving a larger payout, would likewise "thwart" the purpose of "[t]he waiver provision found in section 216(c)[, which] was intended to create an incentive

---

³ "The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981." *Smith v. Shook*, 237 F.3d 1322, 1325 n.1 (11th Cir. 2001) (per curiam).

for employers to voluntarily accept settlements supervised by the Department of Labor." *Id.* at 1353.[4]

That said, the Plaintiffs' supplemental brief (Doc. 98) points to sufficient portions of the record that indicate a *bona fide* dispute over whether the DOL Settlement Plaintiffs' validly waived their rights to participate in this lawsuit. In an unsworn declaration submitted by the Plaintiffs in support of their motion for conditional certification, a former employee of the Defendants, who received a payment from the DOL settlement but did not opt into this action, asserts that she

---

[4] In prior filings, the Plaintiffs have suggested that the Defendants acted inappropriately by "keep[ing] the Plaintiffs' and the Court in the dark about Defendants' extensive dealings and purported settlement with the DOL[,]" claiming that, instead of "immediately seeking a stay, Defendants delayed notifying the Court and the Plaintiffs of the DOL settlement until after it had issued settlement checks to putative class members and presumably obtained releases from them." (Doc. 36 at 2). As the Plaintiffs see it, "Defendants have ignored this Court's managerial authority over this action and are trying to force the Court into endorsing their brazen end run around its authority by doing what they want and then notifying the Court of the releases." (*Id.* at 4).

However, the undersigned is not convinced that the Defendants acted inappropriately in this regard. Given that the DOL is expressly authorized by statute to supervise settlement proceedings for FLSA wage-and-hour lawsuits, the Defendants can hardly be faulted for cooperating with such an investigation – indeed, as noted above, the waiver provision of § 216(c) was passed to encourage employers to voluntarily accept DOL-supervised settlements. Moreover, as noted previously, while the complaint initiating this action was filed March 21, 2018, the Defendants were not served with the complaint until late May and early June of 2018, at which time the DOL settlement process was already underway. As counsel for the Plaintiffs admitted in a filing with the Court, this delay was the result of counsel's "mistaken[] belie[f] that the process for service of summons had been initiated and completed on all Defendants" while he was transitioning law offices. (Doc. 13). The Plaintiffs further delayed in seeking conditional certification of this action until almost 2 months after the Defendants filed their answer. (*Compare* Doc. 20 *with* Doc. 31). Given that Fitzwater and early opt-in Plaintiff Phillips were not a part of the DOL settlement process, those proceedings were simply not relevant considerations in this action until the Plaintiffs actually sought conditional certification.

first learned about the settlement through a chance encounter with a former co-worker; that when she went to the Defendants' restaurant to collect her settlement check, she "was told to sign a folded piece of paper, confirming [she] had received the check[,]" that she understood to be "a receipt[;]" and that "[n]o one explained…that the paper…was giving up [her] right to sue."  (Doc. 50-1).  These representations adequately suggest a *bona fide* dispute over whether the DOL sufficiently supervised the settlement process, and thus whether the DOL Settlement Plaintiffs' waivers are valid.[5]  The record also otherwise indicates that there are *bona fide* disputes over FLSA wage-and-hour provisions for all Plaintiffs. While the Defendants concede that they required the Plaintiffs to engage in an invalid "tip pool" arrangement, the measure of damages is contested, as evidenced by, *inter alia*, the Defendants' motion for judgment on the pleadings seeking a ruling that certain withheld tips are not recoverable under the FLSA.  *See* (Doc. 10); *Lynn's Food*, 679 F.2d at 1354 ("A settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or *computation of back wages*, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation."

---

[5] *See Niland*, 377 F.3d at 1247 ("In *Lynn's Food Stores*, we held there was inadequate supervision where the DOL was completely uninvolved in the employer's attempt to settle a claim for back wages. *See* 679 F.2d at 1352–53. In contrast, in *Sneed*, we held there was adequate supervision where a DOL official investigated the claim for back wages, determined the amount owed the employee, presented the check to the employee on the employer's behalf, and required the employee to sign a receipt waiving his right to sue. *See* 545 F.2d at 538–39. []In this case, the Perry affidavit demonstrates that, as in *Sneed*, the DOL played a significant role in both Delta's self-audit and Delta's payment of back wages.").

(emphasis added)).   The Defendants also dispute that the Plaintiffs are entitled to liquidated damages in this action, claiming a defense of good faith.   (*See* Doc. 94 at 4 – 5).

Pursuant to the settlement agreement, the Plaintiffs will receive the following amounts to settle their claims for back wages and liquidated damages:

- Fitzwater - $16,266.35
- Phillips - $38,903.60
- Odom - $3,046.30
- Smith - $3,778.32
- Woodard - $7,745.97
- McLaughlin - $644.41
- Glass - $5,602.10

The parties agree that each of the Plaintiffs stands to receive significantly more under this settlement than they would (or did) under the DOL settlement formula,[6] and that these amounts were negotiated prior to discussions regarding attorneys' fees and costs.   The undersigned finds those amounts to be fair and reasonable settlements of the aforementioned *bona fide* FLSA disputes.

In addition to settling the Plaintiffs' claims for back wages and liquidated damages under the FLSA's minimum wage and overtime provisions, 29 U.S.C. §

---

[6] At the October 4 telephonic hearing, the parties also clarified that the DOL Settlement Plaintiffs would not be retaining their DOL settlements in addition to the amounts agreed upon here.   Rather, the Defendants' settlement payments in this lawsuit will be offset by what they have already paid those Plaintiffs through the DOL settlement process.

206, the parties also report that they have separately settled Fitzwater's potential claim for unlawful retaliation in violation of 29 U.S.C. § 215(a)(3) in exchange for a payment of $15,000.[7] *Lynn's Food* states that its rule applies to compromises of "FLSA back wage or liquidated damage claims…" 679 F.2d at 1355. Noting this language and examining the statutory text of the FLSA, some district courts have concluded, and the undersigned agrees, "that *Lynn's Food* and the FLSA do not compel the Court to approve the fairness of an FLSA retaliatory discharge settlement, provided that the terms of that settlement do not 'contaminate' or affect the settlement of the FLSA wage claim." *Hernandez v. Iron Container, LLC*, No. 13-22170-CIV, 2014 WL 633848, at *2 (S.D. Fla. Feb. 18, 2014) (citing cases). *Accord Kelly v. Aspire Physical Recovery at Hoover, LLC*, No. 2:17-CV-00961-JHE, 2018 WL 3186961, at *2 (N.D. Ala. June 28, 2018) ("*Lynn's Food* does not discuss judicial oversight of retaliatory termination claims. Accordingly, courts in this Circuit have generally concluded that an FSLA retaliatory discharge claim is not subject to the same review unless its terms contaminate any associated wage claim.").

The parties also propose to pay Fitzwater an additional $5,000, which the Plaintiffs characterize as a service/incentive award for bringing this action on behalf of the class.[8] In the context of class actions under Federal Rule of Civil Procedure

---

[7] No cause of action for retaliatory discharge was included in the complaint, but it does allege that Fitzwater was terminated from her job with the Defendants after complaining to management about perceived FLSA violations. (*See* Doc. 1 at 6).

[8] The Defendants report that they "do not object to Plaintiffs' counsel's allocation of

23, "[m]any circuits have endorsed incentive awards [for named class representatives] and recognize them as serving the purposes of Rule 23." *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1196 (11th Cir.) (citing cases), *reh'g en banc granted, opinion vacated*, 939 F.3d 1278 (11th Cir. 2019). However,

> [t]here is no provision for a "representative plaintiff" under the FLSA. As the Eleventh Circuit has observed, the collective action provision of the FLSA "is a fundamentally different creature than the Rule 23 class action. Even if the [FLSA] plaintiff can demonstrate that there are other plaintiffs 'similarly situated' to him, ... he has no right to represent them." *Cameron–Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240, 1249 (11th Cir. 2003) (per curiam). Because there is no "representative plaintiff" in FLSA collective actions, generally no incentive payment to a named plaintiff in an FLSA collective action is warranted.

*Heath v. Hard Rock Cafe Int'l (STP), Inc.*, No. 6:10-CV-344-ORL-28, 2011 WL 5877506, at *4 (M.D. Fla. Oct. 28, 2011), *report and recommendation adopted*, No. 6:10-CV-344-ORL-28, 2011 WL 5873968 (M.D. Fla. Nov. 23, 2011).

Some district courts have nevertheless found incentive awards to be appropriate in FLSA collective actions under certain circumstances, such as when named FLSA plaintiffs "establish that they faced substantial risks by participating in the lawsuit and incurred actual expenses during the litigation." *Id.* at *5. *See also, e.g., Plummer v. PJCF, LLC*, No. 2:15-CV-37-FTM-38CM, 2015 WL 5952426, at *3 (M.D. Fla. Oct. 13, 2015). Those cases, however, appear to lump consideration of the proposed service/incentive award into the general "fair and reasonable"

---

settlement funds and characterization of distributions however Plaintiffs' counsel determines." (Doc. 94 at 8).

scrutiny, which, as previously noted, applies only to compromises of FLSA back wage and liquidated damages claims.

The joint motion states that the parties "agreed that Named Plaintiff Fitzwater would generally release her claims because of the additional consideration allocated to her as a service award and to settle her FLSA-retaliation claims." (Doc. 94 at 7 – 8). As such, the $5,000 "service/incentive award" appears to simply be additional consideration in exchange for a pervasive release of Fitzwater's claims against the Defendants. However the parties choose to categorize that additional portion of their settlement, the Court need not weigh in on whether it is fair and reasonable so long as it does not contaminate the compromise of the Plaintiffs' claims for back pay and liquidated damages.[9] And considering the parties' representations, the undersigned finds that Fitzwater's pervasive release of all other potential causes of action against the Defendants for $20,000 does not contaminate or otherwise affect the settlement of any of the

---

[9] This makes sense, as incentive awards are generally scrutinized in class actions because they are taken from the "common fund" available to the class, thus reducing the recovery of other class members. *See* 2 McLaughlin on Class Actions § 6:28 (16th ed.); *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) ("In cases where the class receives a monetary settlement, [incentive] awards are often taken from the class's recovery."). Moreover, because the actions of a named class representative can bind the unnamed class members, "applications for incentive awards are scrutinized carefully by courts who sensibly fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). No such similar concern is present in an FLSA collective action, where the named plaintiff has no ability to compromise anyone else's claims, whether or not those other individuals opt into a collective action.

Plaintiffs' claims for back wages and liquidated damages. *See Hernandez*, 2014 WL 633848, at *2.[10]

"FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (per curiam) (unpublished) (citing *Lynn's Food*, 679 F.2d at 1352 ("FLSA rights cannot be abridged by contract or otherwise waived.") (quotation and citation omitted)). In their motion to approve the settlement agreement, the parties agree

---

[10] *Hernandez* involved a claim for FLSA retaliation filed after the plaintiff had previously brought and settled FLSA wage and overtime claims against his employer in a separate action. In addressing whether the parties could voluntarily dismiss the retaliation claim without court approval, the district court stated:

> [T]he Court is concerned about a scenario where an FLSA plaintiff's attorney purposefully and strategically bifurcates an FLSA wage claim and a retaliatory discharge claim into two lawsuits so that he can obtain a greater fees recovery. In bifurcating the two claims, the plaintiff's attorney could intentionally shift or allocate a greater portion of the total fees recovery in both cases to the FLSA retaliatory discharge suit because it is not subject to court approval. In this hypothetical scenario, the FLSA retaliatory discharge claim could contaminate the settlement of the FLSA wage claim, but a court likely would not be aware of the need to scrutinize the FLSA wage settlement for a possible unfair allocation of the recovery between the claimant and his counsel because it would not also have the retaliatory discharge settlement before it.

*Hernandez*, 2014 WL 633848, at *2. In contrast, the *Hernandez* court noted that in other cases addressing the issue, "the parties contemporaneously settled all FLSA claims (retaliatory and wage) and those courts had the entire settlement agreement before them for review. While those courts reached the legal conclusion that they did not have to proverbially 'look under the hood' to determine the fairness of the FLSA retaliatory discharge settlement, as a practical matter they did in fact get to 'look under the hood.' " *Id.* As in those other cases, the parties here have settled both back wage and retaliation FLSA claims simultaneously, and the undersigned finds voluntary dismissal of the retaliation claims to be a fair component of the parties' settlement agreement.

that the Plaintiffs are prevailing parties under the FLSA and thus entitled to reasonable attorneys' fees and costs in this action, but they also agree that the amount of those fees and costs will be assessed following the Court's approval of the Plaintiffs' settlement of their back wage and liquidated damages claims. More recently, the Plaintiffs report that the "[p]arties have discussed attorney fees and costs and Defendants declared an impasse on November 11, 2019[,]" with the Plaintiffs requesting additional time to submit a motion for attorneys' fees and costs. (Doc. 99 at 2). Accordingly, it is apparent that the issue of attorneys' fees and costs, which has not yet been resolved, does not taint the settlement amounts received by the Plaintiffs on their wage-and-hour claims. *See Silva*, 307 F. App'x at 351 ("FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.").

Though not addressed in their joint motion, the parties' proposed stipulated judgment appears to request that the Court make findings about how the various proceeds from this settlement agreement will be treated for tax purposes. The parties have not presented any authority to suggest that such findings are either permitted or appropriate, and the undersigned declines to make any such findings here or include them in the resulting judgment. The undersigned also declines to include specific instructions about how disbursement of this settlement is to be carried out, to retain jurisdiction to enforce the settlement agreement, or to delay dismissal of the Plaintiffs' claims until the issue of attorneys' fees and costs is

resolved.[11]  However, the undersigned will permit a generous period to allow for reinstatement of this action should the settlement agreement not be carried out in full.

In accordance with the foregoing analysis, it is **ORDERED** that the parties' joint motion to approve the settlement of the Plaintiffs' FLSA claims (Doc. 94) is **GRANTED in part** and **DENIED in part**, in that the proposed settlement is **APPROVED** as a fair and reasonable resolution of a bona fide dispute over FLSA provisions, that certain requested relief is **DENIED** as set forth above, and that a modified version of the parties' stipulated final judgment will separately issue in accordance with the settlement agreement, *Lynn's Food*, and Federal Rule of Civil Procedure 58, at which time all of the Plaintiff's claims in this action shall be **DISMISSED with prejudice**, subject to the right of any party to move to reinstate this action within **ninety (90) days** from the date of entry of the accompanying judgment, should the settlement agreement not be fully carried out.  As such, the Plaintiffs' pending motion to compel (Doc. 78) and motion to extend the discovery deadline (Doc. 86), and the Defendants' pending motion for partial judgment on the pleadings (Doc. 73), are **MOOT**, and all remaining deadlines and settings in the scheduling order are **CANCELED**.

---

[11] *See Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Engineers & Participating Employers*, 571 U.S. 177, 179 (2014) ("Whether the claim for attorney's fees is based on a statute, a contract, or both, the pendency of a ruling on an award for fees and costs does not prevent, as a general rule, the merits judgment from becoming final for purposes of appeal.").

The Court hereby sets **Friday, January 31, 2020**, as the deadline for the Plaintiffs to file and serve any motion for attorneys' fees and costs under Federal Rule of Civil Procedure 54(d) in connection with the accompanying final judgment.[12] An appropriate briefing schedule will be entered if any such motion is timely filed.

**DONE** and **ORDERED** this the 22nd day of November 2019.

                                         */s/ Katherine P. Nelson*
                                         **KATHERINE P. NELSON**
                                         **UNITED STATES MAGISTRATE JUDGE**

---

[12] The Plaintiffs' renewed motion to approve the settlement agreement (Doc. 99) is **MOOT**, and their request that the Court give them "until January 31, 2019 [sic] to submit their fee petition in this case" (Doc. 99) is **GRANTED**.